**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| J. PATRICK LINDSEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-09-0700 |
| | § | |
| DYNCORP INTERNATIONAL LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is a contract dispute between J. Patrick Lindsey and DynCorp International LLC ("DI").

Lindsey alleges that DI breached his written employment contract by failing to pay him the salary

stated in that contract. (Docket Entry No. 17). DI contends that the salary stated in the contract was

incorrect and that Lindsey was informed of the mistake shortly after he began his employment. DI

contends that Lindsey accepted the change in the salary by continuing to work under the corrected

contract. (Docket Entry No. 24). DI has moved for summary judgment, (*id.*), and Lindsey has

responded, (Docket Entry No. 27).

Based on the motion and response, the summary judgment record, and the applicable law,

this court grants DI's motion and enters final judgment by separate order. The reasons are explained

in detail below.

**I.      The Summary Judgment Evidence[1]**

---

[1] The summary judgment record includes a copy of Lindsey's employment contract, (Docket Entry No. 28
at 7-13); the employment agreement of another DI employee, Aaron M. Jackson, (Docket Entry No. 24-1 at
6-12); the December 28, 2009 affidavit of Dean Campbell, a DI Vice-President of Human Resources, (*Id.* at
4-5); Lindsey's amended response to requests for admission, (*Id.* at 13-14); Lindsey's January 11, 2010
affidavit, (Docket Entry No. 28 at 5-6); the January 19, 2010 affidavit of Lindsey's attorney, Woodrow
Epperson, (*Id.* at 3-4); Lindsey's February 1, 2007 pay statement, (*Id.* at 14, 19); Lindsey's March 16, 2007
pay statement, (*Id.* at 18); Lindsey's October 12, 2007 pay statement, (*Id.* at 17); and a letter confirming

On January 13, 2007, Lindsey, then a Texas resident, signed a Foreign Service Employment Agreement with DI to work in Iraq on a U.S. government contract. The Agreement was for an eight-month term "unless terminated earlier by either party pursuant to" the paragraph on termination. (Docket Entry No. 28 at 7). That paragraph set out certain categories of for-cause termination, which would discharge any obligation for DI to pay travel expenses or other allowances to the terminated employee. (*Id.* at 11). The paragraph also stated that "[t]he employee may voluntarily terminate this Contract at any time by providing a 15-day notice to [DI]," and that DI had "the right, in its sole discretion to terminate this Contract without cause at any time." If DI terminated him without cause, Lindsey would be entitled to some return travel expenses and residual compensation. (*Id.* at 12). The parties agree that Lindsey's employment was at-will. (Docket Entry No. 24-1 at 14).

The Agreement Lindsey signed in January 2007 stated that he would receive $4,063.66 in biweekly pay, with the expectation that he would work a forty-eight hour week.[2] On an annual basis, the salary was $105,655.16. (Docket Entry No. 28 at 7). Lindsey was also entitled to "Danger Pay" and "Post Differential Pay (Hardship) allowance," as well as a completion bonus of 10% of the base wage (excluding danger and hardship pay) on completing the contract term. (*Id.*). DI also agreed to provide housing, transportation, meals, and a $3.50 per day allowance for incidentals. (*Id.*).

---

Lindsey's travel to Iraq as a DI contractor, (*Id.* at 15-16).

[2]  The copy of the Agreement Lindsey submitted, (Docket Entry No. 28 at 7-13), has not been executed by a DI representative. Lindsey has initialed each page and signed the last page. The Agreement DI submitted, (Docket Entry No. 24-1 at 6-12), has been fully executed but is not Lindsey's Agreement. It is a nearly identical employment contract between DI and Aaron M. Jackson. It appears to differ from Lindsey's only in that Jackson was to be paid $4,298.72 biweekly, amounting to a yearly salary of $111,766.72.

According to Dean Crawford, Vice-President of Human Resources, Global Platform Support Solutions for DI, these compensation terms were mistaken. The actual pay for Lindsey's position was an hourly wage of "$24.90/hour or $51,792 plus the 70% uplifts for the international assignment." (Docket Entry No. 24-1, Crawford Aff., at 5). Crawford does not explain an "uplift" or the precise basis for the $51,792 figure. Crawford states that "representatives from DI's staffing organization notified Lindsey of the mistake shortly after presenting him the original [agreement] and sent him an amended first page to the Agreement stating the modified salary." (*Id.*).

Three of Lindsey's pay statements are in the record. The first, from February 1, 2007, states that Lindsey's pay rate is "$4, 063.66 Biweekly." The remaining two, from March 16, 2007 and October 12, 2007, show an hourly pay rate of $24.90. (Docket Entry No. 28 at 17-19).

DI allowed Lindsey to keep the full amount it had paid him during the period in which he received the higher, biweekly salary. After DI reduced his salary, Lindsey continued working for DI in Iraq until his eight-month contract period ended. The paychecks after February 1 were all based on an hourly wage of $24.90 per hour.

In his own affidavit, Lindsey states:

> Upon arriving in Iraq to provide services with [DI], [DI] refused to pay myself and others according to the terms of the signed contract. . . .
>
> [DI] did not notify me of a cancellation, termination or abrogation of the contract I signed. Rather, it advised me that a contract adjustment was provided for allowing payment of "overtime" pay. This was not true or correct. No overtime was ever paid for any employees at my site. I tried to come to a resolution during the entire length of my deployment with [DI], they made no acknowledgment of any "mistake" by [DI] or it's [sic] representatives. I continued my full obligation of employment and honored the contract I signed, in hope that [DI] would do the same. My only recourse after the company's refusal to fulfill their contractual obligations was to institute a legal suit against [DI].

3

(Docket Entry No. 28, Lindsey Aff. at 5).

Lindsey filed this suit in Texas state court on December 29, 2008, asserting a claim for fraud and misrepresentation. (Docket Entry No. 1-1 at 4). DI removed to this court on March 9, 2009 (Docket Entry No.1). Lindsey filed an amended complaint, adding a claim for breach of contract, (Docket Entry No. 10). On June 30, 2009, Lindsey filed a Second Amended Complaint, which asserted only the contract claim. (Docket Entry No. 17).

On December 28, 2009, DI moved for summary judgment, arguing that the undisputed facts showed that there was no contract breach, as a matter of law, because the change in salary was an enforceable contract modification. (Docket Entry No. 24). Lindsey timely responded. (Docket Entry No. 27).

## II.    The Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, *Inc. v. Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one

4

party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Id.* (emphasis in original); *see also Meecorp Capital Markets LLC v. Tex-Wave Industries LP*, 265 Fed. App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*, 790 F.2d at 1194).

### III.    Analysis

The disputed issue is whether the change in Lindsey's pay was an enforceable contract modification. DI analyzes the parties' Employment Agreement using Texas case law. Lindsey does not challenge this approach.  The Agreement, however, contains a choice-of-law provision specifying Virginia law and a forum-selection provision specifying a Virginia forum.  DI has not challenged the fact that Lindsey filed this suit in Texas.  Apart from the choice-of-law clause, Texas law would apply because Texas has a more significant relationship to this case than Virginia.  *See Maxus Exploration Co. v. Moran Bros., Inc*., 817 S.W.2d 50, 53-54 (Tex.1991) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)) (a contract dispute is governed by "'the law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties.'").

Virginia law enforces contract modifications upon "a finding of a 'mutual intention' that the modification be effective."  *Stanley's Cafeteria, Inc. v. Abramson*, 306 S.E.2d 870, 873 (Va. 1983). That intention must be demonstrated by  by "clear, unequivocal and convincing evidence, direct or implied." *Id.* (quotations omitted); *see also Reid v. Boyle*, 527 S.E.2d 137, 144-45 (Va. 2000) (citing *Stanley's Cafeteria*, 306 S.E.2d at 873).  In Virginia, like Texas,  absent a specific agreement to the contrary, employment is at-will.  *See County of Giles v. Wines*, 546 S.E.2d 721 (Va. 2001); *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).

Under Texas law, in an at-will employment relationship, "either party may impose modifications to the employment terms as a condition of continued employment."  *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986); *see also In re Halliburton Co.*, 80 S.W.3d 566, 568-69 (Tex. 2002) (applying the *Hathaway* analysis).  Because modifications must satisfy the ordinary elements of a valid contract, the party seeking to enforce the contract as modified has the

burden to prove that the other party agreed to the modification. *Id.* at 228-29. To meet this burden, the party must show that the other party received notice of the change. *Id.* at 229. "If the employer proves that he has unequivocally notified the employee of the changes, the employee's continuing employment will constitute acceptance as a matter of law." *Id.* Because it is undisputed that Lindsey continued to work until the end of his contract term, the issue is whether DI provided Lindsey with notice of the modification. If notice was given, Lindsey accepted the modification by continuing to work. *See id.*; *see also Stone v. Golden Wexler & Sarnese, P.C.*, 341 F.Supp.2d 189, 192-93 (E.D.N.Y. 2004) (applying Virginia law and finding no "clear, unequivocal, and convincing" evidence of customer's intent to accept a modification adding an arbitration clause because plaintiff never use the arbitration procedure and testified that she was not even aware of the clause).

DI has submitted uncontroverted evidence that Lindsey was notified of "the nature of the changes and the certainty of their imposition." *Id.* The pay statements show that Lindsey was informed of the change in his pay. His February 1, 2007 pay statement shows the pay rate as "$4,063.66 Biweekly." (Docket Entry No. 28 at 19). By contrast, the March 16, 2007 and October 12, 2007 pay statements show the pay rate as "$24.900000 Hourly." (*Id.* at 17-18). These pay statements alone may not have been sufficient to establish "unequivocal" notice. *See Intec Systems, Inc. v. Lowrey*, 230 S.W.3d 913, 918-19 (Tex. App.—Dallas 2007, no pet.) (finding that enforceability of a modification was not "conclusively established" by an e-mail containing a formula for calculating the amount to be deducted from an employee's commission because it did not state that the formula was being changed); *Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 350 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)) (holding that there was "some evidence" to support jury's finding that a commission statement calculating commission at

7

a rate different than provided in contract did not provide unequivocal notice of future basis for calculation). But the record in this case includes additional uncontroverted evidence of notice to Lindsey that his compensation was changed from what the written Employment Agreement originally stated.

Crawford states in his affidavit that DI sent Lindsey a new first page with the modified salary terms. Lindsey does not controvert this evidence. Lindsey states in his affidavit that DI never notified him of a "cancellation, termination, or abrogation of the contract." (Docket Entry No. 28, Lindsey Aff. at 5). He does not include "modification" in this list. The record shows that, in addition to the pay statements, DI sent Lindsey a new first page of the employment agreement, clearly stating the new compensation terms. The pay statements and the replacement page together revealed the "nature of the changes" because they showed that Lindsey's pay had been changed from $4,063.66 biweekly to $24.90 per hour. And they revealed the certainty that the changes would be imposed. There is no evidence that DI gave Lindsey conflicting messages about which set of pay terms would apply. *See Hathaway*, 777 S.W.2d at 229 (finding that no unequivocal notice was given because employee was told different things by different representatives of the employer).

Lindsey acknowledges that he received notice of the contract change when he states in his affidavit that DI "advised me that a contract adjustment was provided for allowing payment of 'overtime' pay." (*Id.*). Lindsey then states that he received no overtime pay. The record undercuts Lindsey's assertion that he was not paid overtime. The pay statements Lindsey submitted, one from March 16, 2007 and one from October 12, 2007, state that he was paid both "Overtime Premium" and "Regular Overtime." (Docket Entry No. 28 at 17, 18).

8

Lindsey also states in his affidavit that he raised the issue of the pay change during his work for DI, without success.   Lindsey's own affidavit shows that after he received notice of the modification to his pay, he told DI that he disagreed with the change and tried to resolve the issue with DI during his employment.   Lindsey acknowledges that he did not reach a "resolution" of the dispute with DI.

Lindsey also acknowledges that he worked for DI through the contract term.   "I continued my full obligation of employment and honored the contract I signed, in hope that [DI] would do the same."   (*Id.*).   Once Lindsey knew about the change in his pay and that he could not continue working under the previous salary terms, his choice was to "accept the new terms or quit."   *Id.* Lindsey continued to work, providing "clear, unequivocal, and convincing evidence" that he had accepted the modification.   *See Stanley's Cafeteria*, 306 S.E.2d at 873 (applying Virginia law); *Gustafson v. Southland Life Ins. Co.*, 885 F.Supp. 854, 858 (E.D. Va. 1995) (finding intent to modify life insurance contract based on customer's paying increased premiums that corresponded to a higher death benefit).

The contract modification is enforceable.   It is undisputed that DI paid Lindsey the full amount it owed him under the modified contract.   Lindsey's breach of contract claim fails as a matter of law.

## IV.   Conclusion

DI's motion for summary judgment is granted.   Final judgment is entered by separate order.

SIGNED on January 25, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge